# EXHIBIT A

**BEATTIE PADOVANO, LLC**
**Arthur N. Chagaris 000741975**
**Martin R. Kafafian 025832013**
**50 Chestnut Ridge Road**
**P.O. Box 244**
**Montvale, New Jersey 07645-0244**
**(201) 573-1810**
mrk@beattielaw.com
achagaris@beattielaw.com
*Attorneys for Plaintiff*
*EPTA America, LLC*

SUPERIOR COURT BERGEN COUNTY
**FILED**

DEC - 6 2018

*[signature]*
DEPUTY CLERK

| | |
|---|---|
| EPTA AMERICA, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN CASUALTY COMPANY OF READING, PA, CONTINETNAL CASUALTY COMPANY, and CNA FINANCIAL CORPORATION,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION:  BERGEN COUNTY<br><br>DOCKET NO. BER-C-327-18<br><br>CIVIL ACTION<br><br>**COMPLAINT FOR**<br>**DECLARATORY JUDGMENT** |

Plaintiffs EPTA America, LLC ("EPTA"), by its attorneys Beattie Padovano, LLC, by way of complaint for declaratory judgment against defendants, state as follows:

## THE PARTIES

1.     Plaintiff EPTA is a limited liability company organized under the laws of the State of New Jersey with a business address at 50 Morton Street, East Rutherford, New Jersey 07073.

2.     Defendant American Casualty Company of Reading, PA ("American Casualty") is, upon information and belief, a corporation or other business organization authorized to write general commercial liability and other insurance policies in the State of New Jersey.

3.     Defendant Continental Casualty Company ("Continental Casualty") is, upon information and belief, a corporation or other business organization authorized to write general commercial liability and other insurance policies in the State of New Jersey.

1

4.      Defendant CNA Financial Corporation ("CNA") is, upon information and belief, a corporation or other business organization authorized to write general commercial liability and other insurance policies in the State of New Jersey.

5.      American Casualty, Continental Casualty, and CNA are referred to collectively as "Defendants."

## FIRST COUNT

6.      This Action is brought under New Jersey's Declaratory Judgment Act, N.J.S.A. 2A:16-50, et seq.

7.      American Casualty issued primary coverage under a Connect Renewal Policy ("CGL Policy") to EPTA under Policy No. B5085627212 covering the policy periods covering December 1, 2015 through December 1, 2017.

8.      Continental Casualty issued primary coverage under a Connect Renewal Policy ("CGL Policy") to EPTA under Policy No. B5085627212 covering the policy period December 1, 2017 through December 1, 2018.

9.      Continental Casualty also issued Commercial Umbrella Plus Renewal Policy ("Umbrella Policy") to EPTA under Policy No. B5085627307 covering the policy periods December 1, 2015 through December 1, 2018.

10.     Each of the CGL Policy provides one million ($1,000,000.00) dollars liability coverage for Personal and Advertising Injury and each policy is subject to a two million ($2,000,000.00) dollar aggregate.

11.     The Umbrella Policy provides nine million ($9,000,000.00) dollars liability coverage for Personal and Advertising Injury and each policy is subject to a nine million ($9,000,000.00) dollar aggregate.

2

12.     Both the CGL Policies and the Umbrella Policy provide coverage for Personal and Advertising Injury (as therein defined), which include injuries arising out of, among other things, oral or written publication, in any manner, or material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

13.     The CGL Policies and Umbrella policies also provide that the Defendants will investigate and defend an insured or reimburse an insured for reasonable defense costs incurred in defending law suits.

14.     EPTA was named as a Cross-Claim Defendant in a Cross-Claim filed by Luay Alhusan d/b/a Modern Innovations USA in an action pending before the California Superior Court, County of Orange, styled *EPTA America LLC v. Adil Abdul Aziz Alhouran d/b/a Modern Innovations USA, et al*, Case No. 30-2017-00939685 (California Superior Court, County of Orange) ("California Suit").

15.     A true copy of the Cross-Complaint filed in the California Suit is attached hereto as **Exhibit A**.

16.     The Cross-Complaint filed in the California Suit asserts eight causes of action against EPTA, which include the following:

> a.  First Cause of Action—Breach Of The Covenant Of Good Faith And Fair Dealing (2014 Distribution Agreement);
>
> b.  Second Cause of Action—Breach Of The Covenant Of Good Faith And Fair Dealing (Amended 2014 Distribution Agreement);
>
> c.  Third Cause of Action—Intentional Interference with Contractual Relations;
>
> d.  Fourth Cause of Action—Intentional Interference with Prospective Economic Relations;
>
> e.  Fifth Cause of Action—Negligent Interference with Prospective Economic Relations;
>
> f.  Sixth Cause of Action—Fraudulent Concealment and Inducement;

3

      g.    <u>Seventh Cause of Action</u>—Breach of Contract not in Writing; and

      h.    <u>Eight Cause of Action</u>—Breach of Contract in Writing.

17.      Certain of these claims—including, but not limited to the Fourth and Fifth Causes of Action—seek damages arising out of (allegedly) false claims made in an October 2016 letter sent by EPTA's CEO.

18.      EPTA, via notice of claim, tendered the California Suit to the Defendants and requested that they provide a defense and indemnification under the CGL Policy and Umbrella Policies.

19.      By letter dated October 19, 2018 ("Denial Letter"), the Defendants denied coverage to for the California Suit.

20.      A true copy of the Denial Letter is attached hereto as **Exhibit B**.

21.      EPTA appealed the Denial of Coverage.

22.      By letter dated November 6, 2018 ("Denial of Appeal Letter"), the Defendants advised EPTA that its internally convened New Jersey Appeal Panel was upholding the denial of coverage.

23.      A true copy of the Denial of Appeal Letter is attached hereto as **Exhibit C**.

24.      A dispute exists regarding whether EPTA is entitled to both a defense and indemnification under the applicable CGL Policies and Umbrella Policies covering Personal and Advertising Injuries for the claims set forth in the California Suit as the claims asserted in the California Suit stem from an alleged misrepresentation which satisfies the coverage criteria.

25.      Upon information and belief, the Defendants' denial of coverage was made in bad faith.

4

**WHEREFORE**, Plaintiffs demand judgment as follows:

a) Declaring and adjudging that the Defendants are obligated to provide EPTA with a defense and/or reimburse EPTA for defense costs incurred in defending against the allegations set forth in the Cross-Complaint filed in *EPTA America LLC v. Adil Abdul Aziz Alhouran d/b/a Modern Innovations USA, et al*, Case No. 30-2017-00939685 (California Superior Court, County of Orange);

b) Declaring and adjudging that the Defendants are obligated to indemnify EPTA against any claims and/or judgment entered against them and/or settlements reached in *EPTA America LLC v. Adil Abdul Aziz Alhouran d/b/a Modern Innovations USA, et al*, Case No. 30-2017-00939685 (California Superior Court, County of Orange) up to the full liability limits of the relevant insurance policies;

c) Awarding EPTA punitive damages, counsel fees and costs of suit; and

d) Awarding EPTA such other relief as the court deems just and proper.

**BEATTIE PADOVANO, LLC**
Attorneys for Plaintiff EPTA America, LLC

Dated:  December 4, 2018

By: _____
MARTIN R. KAFAFIAN

5

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:5-1(c) and R. 4:25-4, Arthur N. Chagaris is here by designated as trial counsel.

**BEATTIE PADOVANO, LLC**
Attorneys for Plaintiff EPTA America, LLC

By: _____
MARTIN R. KAFAFIAN

Dated:  December 4, 2018

## R. 4:5-1(b)(2) CERTIFICATION

I certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding and is not the subject of any other contemplated action other than an action pending in the Superior Court of the State of California, County of Orange, captioned *EPTA America, LLC v. Adil Abdul Aziz Ahourani d/b/a Modern Innovations USA, et al.*, Case No. 30-2017-00939685-CU-CL-CLC.  I am not aware at this time of any other parties who should be joined to this action or who is subject to joinder.

**BEATTIE PADOVANO, LLC**
Attorneys for Plaintiff EPTA America, LLC

By: _____
MARTIN R. KAFAFIAN

Dated:  December 4, 2018

3367558_1\180909

## RULE 1:38-7 CERTIFICATION

Pursuant to Rule 4:5-1(b)(3) and Rule 1:38-7(c), I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

**BEATTIE PADOVANO, LLC**
Attorneys for Plaintiff EPTA America, LLC

Dated:  December 4, 2018                          By: _____
                                                          MARTIN R. KAFAFIAN

7

# Exhibit A

1   Ahmed M. Jammal (SBN 317276)
    ahmed@jammalesq.com
2   JAMMAL, ESQ. APC
    245 Fischer Avenue, Suite B4
3   Costa Mesa, CA 92626
    Telephone: (949) 420-9290
4

5   Attorney for Defendant:
    MODERN INNOVATIONS USA
6

7

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9          **FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER**

10

| | |
|---|---|
| 11  EPTA AMERICA, LLC, | Case No.: 30-2017-00939685-CU-CL-CJC |
| 12         Plaintiffs, | **ADIL ABDUL AZIZ ALHOURANI DBA** |
| 13 | **MODERN INNOVATIONS USA AND** |
|        v. | **LUAY ALHUSAN DBA MODERN** |
| 14 | **INNOVATIONS USA'S CROSS-** |
| 15  ADIL ABDUL AZIZ ALHOURANI dba | **COMPLAINT AGAINST EPTA** |
|    MODERN INNOVATIONS USA; LUAY | **AMERICA, LLC** |
| 16  BADDDAR AKA LUAY ALHUSAN dba | |
|    MODERN INNOVATIONS USA; ZEST US, | [Assigned to the Hon. Judge Walter Shwarm, |
| 17  a California Corporation; and DOES 1 through | Dept. C19] |
|    10, inclusive, | |
| 18 | **DEMAND FOR JURY TRIAL** |
|         Defendants. | |
| 19 | |
| 20 | |
|    ADIL ABDUL AZIZ ALHOURANI dba | |
| 21  MODERN INNOVATIONS USA; and LUAY | |
|    BADDDAR AKA LUAY ALHUSAN dba | |
| 22  MODERN INNOVATIONS USA, | |
| 23         Cross-Complainants, | |
| 24 | |
|        v. | |
| 25 | |
|    EPTA AMERICA, LLC; and DOES 1 through | |
| 26  20, inclusive, | |
| 27         Cross-Defendant. | |
| 28 | |

- 1 -

Defendants Adil Abdul Aziz Alhourani dba Modern Innovations USA and Luay Baddar dba Modern Innovations USA, allege the following Cross-Complaint against plaintiff and cross-defendant EPTA America, LLC, and Does 1 through 20:

## PARTIES

1.      Defendants and cross-complainants Adil Abdul Aziz Alhourani dba Modern Innovations USA and Luay Alhusan dba Modern Innovations USA ("Modern Innovations") were a general partnership formed under the laws of the state of California and is qualified to do business in California. Modern Innovations has since dissolved its partnership.

2.      Upon information and belief, plaintiff and cross-defendant EPTA America, LLC ("EPTA") is a limited liability company formed under the laws of the state of New Jersey and is qualified to do business in California.

3.      Cross-complainants are presently unaware or the true names and capacities of cross-defendants sued herein as Does 1 through 20, inclusive, and therefor sue said cross-defendants by fictitious names. Cross-complainants will amend this Cross-Complaint to allege the true names and capacities of such fictitiously-named cross-defendants when their names and capacities have been ascertained. Upon information and belief, each of the fictitiously-named cross-defendants is responsible in some manner for the occurrences, acts, and omissions alleged herein and that cross-complainants' damages were proximately caused by their conduct.

## ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

4.      Upon information and belief, EPTA is the exclusive representative of the 7Days brand in North America. The 7Days brand is an international brand of individually packaged snacks that are sold in convivence stores, drugs stores, supermarkets, and the like. Their products consist namely of croissants, mini croissants, strudels, bagel chips, and pizzeti. The brand is marketed in multiple countries.

- 1 -

5.      On April 15, 2014, EPTA and Modern Innovations entered into a distributor agreement (the "2014 Distributor Agreement"), which was signed by Mr. Alhusan and Michael Stevenson. Upon information and belief, Mr. Stevenson was the General Manager of EPTA around and during the time the 2014 Distributor Agreement was entered into.

6.      Modern Innovations was in the business of distributing snack and food products to different wholesale and retail outlets. The purpose of the 2014 Distributor Agreement was to grant Modern Innovations the exclusive right to market and sell EPTA's 7Days brand within the state of California.

7.      In 2014 and 2015, Modern Innovations and EPTA's relationship continued according to the 2014 Distributor Agreement. During those years, Modern Innovation's points of contact with EPTA were Mr. Stevenson and Chris Burns. Upon information and belief, Chris Burns was EPTA's Director of Sales during that time period.

8.      Upon information and belief, during the period of 2014 and 2015, Mr. Stevenson communicated to Mr. Alhusan and Mr. Alhourani that EPTA wanted to strengthen and expand the 7Days brand's presence in California, and wanted Modern Innovations to further their marketing and promotions efforts of the 7Days brand.

9.      Upon information and belief, EPTA made verbal promises through its representatives that Modern Innovations would receive credit for any costs expended in promoting the 7Days brand through tradeshows in California. Modern Innovations expended costs in promoting the 7Days brand, namely by entering into contracts with Core-Mark; one of the largest and most valued marketers of fresh and broad-line solutions to the convenience retail industry. EPTA failed to provide those credits.

10.     Upon information and belief, Mr. Stevenson's position was replaced by Jim Burns aka James Burns. In 2016, Jim Burns then contacted Modern Innovations with a proposal to amend

ADIL ABDUL AZIZ ALHOURANI DBA MODERN INNOVATIONS USA AND LUAY ALHUSAN DBA MODERN INNOVATIONS USA'S CROSS-COMPLAINT AGAINST EPTA AMERICA, LLC

the current 2014 Distributor Agreement. Mr. Burns failed to disclose to Modern Innovation that he intended it to further market the 7Days brand in California before "squeezing" them out of the market.

11.     On or about January 20, 2016, Modern Innovations entered into an agreement with Core-Mark's 2016 Anaheim Trade Show to market EPTA's 7Days brand products.

12.     Upon information and belief, on or about February 16, 2016, EPTA compelled Modern Innovations to amend the terms of the 2014 Distribution Agreement (the "Amended 2014 Distribution Agreement"). EPTA failed to disclose that it planned to force Modern Innovations out of the market, and to take its customers away.

13.     EPTA pressured Modern Innovations to lower its prices to its customers on its 7Days products, and then turned around and raised the price of the products to Modern Innovations, contrary to the Amended 2014 Distribution Agreement, matching the customer's price, effectively rendering a zero profit return for Modern Innovation.

14.     Modern Innovations had agreements built business relationships with multiple retail businesses to distribute products to, including EPTA's 7Days brand.

15.     On or about October 2017, EPTA circulated a damaging letter by way of Jim Burns, to Modern Innovations reputation, misstating facts and events.

16.     Mr. Burn's actions were made with malice, and oppression, and fraud in order to defraud Modern Innovations out of the market and to take over the relationships that Modern Innovations built within its network.

17.     EPTA's actions, including the interference with Modern Innovation's relationship with its customers, has caused the partnership, injury and damages, as well as caused injury and damages to its members, Adil Alhourani and Luay Alhusan.

///

- 3 -

ADIL ABDUL AZIZ ALHOURANI DBA MODERN INNOVATIONS USA AND LUAY ALHUSAN DBA
MODERN INNOVATIONS USA'S CROSS-COMPLAINT AGAINST EPTA AMERICA, LLC

**FIRST CAUSE OF ACTION**

**(Breach of the Covenant of Good Faith and Fair Dealing (2014 Distribution Agreement) against All Cross-Defendants)**

18.     Modern Innovations incorporates the allegations of paragraphs 1 to 17 above.

19.     Modern Innovations and EPTA entered into a 2014 Distribution Agreement, for EPTA to supply Modern Innovations with 7Days brand products, and to allow Modern Innovations to acquire the exclusive right to market and sell the brand in California.

20.     Modern Innovations did all, or substantially all, of the significant things that the 2014 Distribution Agreement required it to do.

21.     EPTA unfairly interfered with Modern Innovation's right to receive the benefits of the 2014 Distribution Agreement by contracting with other brokers in the state of California at the same time that Modern Innovations was supposed to receive the exclusive rights.

22.     EPTA's breach was a substantial factor in causing Modern Innovation's harm, in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

**(Breach of Covenant of Good Faith and Fair Dealing (Amended 2014 Distribution Agreement) against All Cross Defendants)**

23.     Modern Innovations incorporates the allegations of paragraphs 1 to 22 above.

24.     Modern Innovations and EPTA amended their 2014 Distribution Agreement in February of 2016.

25.     Modern Innovations did all, or substantially all, of the significant things that the Amended 2014 Distribution Agreement required it to do.

26.     EPTA unfairly interfered with Modern Innovation's right to receive the benefits of the Amended 2014 Distribution Agreement by pressuring Modern Innovation to raise the price of the 7Days brand products to Modern Innovation's customers, and then raising the cost of the

- 4 -

1  products on Modern Innovations contrary to the Amended 2016 Distribution Agreement. EPTA

2  also unfairly interfered with Modern Innovation's right to receive the benefits of the Amended

3  2014 Agreement by contracting with other brokers in the state of California at the same time that

4  Modern Innovations was supposed to receive the exclusive rights under the agreement.

5

6          27.     EPTA's breach was a substantial factor in causing Modern Innovation's harm, in an

7  amount to be determined at trial.

8                          **THIRD CAUSE OF ACTION**

9     **(Intentional Interference With Contractual Relations against All Cross-Defendants)**

10         28.     Modern Innovations incorporates the allegations of paragraphs 1 to 27 above.

11         29.     Modern Innovation had contracts and agreements with its customers to sell them

12  7Brand products. Modern Innovations also had an agreement with Core-Mark to provide

13  promotions and discounts on 7Days brand products to its customers.

14         30.     EPTA knew of these contracts and agreements.

15         31.     EPTA unfairly interfered with Modern Innovation's right to receive the benefits of

16

17  the Amended 2014 Distribution Agreement by circulating unsubstantiated claims and letters to

18  Modern Innovations customers, damaging to Modern Innovations. EPTA also raised Modern

19  Innovation's cost of 7Days brand products to the same level that EPTA pressured Modern

20  Innovations to lower their customer's price to.

21         32.     EPTA intended to disrupt the performance of Modern Innovation's contracts with

22

23  its customers and  knew that disruption of performance was certain or substantially certain to

24  occur.

25         33.     EPTA's actions were a substantial factor in causing Modern Innovation's harm, in

26  an amount to be determined at trial.

27  ///

28

ADIL ABDUL AZIZ ALHOURANI DBA MODERN INNOVATIONS USA AND LUAY ALHUSAN DBA
MODERN INNOVATIONS USA'S CROSS-COMPLAINT AGAINST EPTA AMERICA, LLC

**FOURTH CAUSE OF ACTION**

**(Intentional Interreference With Prospective Economic Relations against All Cross-Defendants)**

34.  Modern Innovations incorporates the allegations of paragraphs 1 to 33 above.

35.  Modern Innovations had ongoing economic relationships with its buyers and clients that probably would have resulted in an economic benefit to Modern Innovations. Modern Innovations historically positive relations with its network of retail outlets would have fostered return customers, further sales, and referrals to Modern Innovations.

36.  EPTA knew of the relationship that Modern Innovations had with its customers.

37.  EPTA engaged in wrongful conduct, including but not limited to unjustifiably holding Modern Innovation's orders, preventing Modern Innovations from supplying its customers, and circulating false and unjustified claims about Modern Innovations to its customers.

38.  By engaging in this conduct, EPTA intended to disrupt the relationship and knew that disruption of the relationship was certain or substantially certain to occur.

39.  Modern Innovation's relationship with its customers was disrupted because many dissatisfied customers were not able to receive additional 7Days brand products from Modern Innovations, resulting in negative a negative reputation to Modern Innovation by its customers. The negative reputation deterred any current customers from purchasing goods from Modern Innovations, whether it being 7Days brand goods or other goods that Modern Innovations sold.

40.  EPTA's actions were a substantial factor in causing Modern Innovation's harm, in an amount to be determined at trial.

///

///

///

- 6 -

**FIFTH CAUSE OF ACTION**

**(Negligent Interference With Prospective Economic Relations against All Cross-Defendants)**

41.   Modern Innovations incorporates the allegations of paragraphs 1 to 40 above.

42.   Modern Innovations had ongoing economic relationships with its buyers and clients that probably would have resulted in an economic benefit to Modern Innovations. Modern Innovations historically positive relations with its network of retail outlets would have fostered return customers, further sales, and referrals to Modern Innovations.

43.   EPTA knew or should have known of the relationship that Modern Innovations had with its customers.

44.   EPTA knew or should have known that this relationship would be disrupted if they failed to act with reasonable care.

45.   EPTA failed to act with reasonable care and engaged in wrongful conduct, including but not limited to unjustifiably holding Modern Innovation's orders, preventing Modern Innovations from supplying its customers, and circulating false and unjustified claims about Modern Innovations to its customers.

46.   EPTA's actions were a substantial factor in causing Modern Innovation's harm, in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**

**(Fraudulent Concealment and Inducement against All Cross-Defendants)**

47.   Modern Innovations incorporates the allegations of paragraphs 1 to 46 above.

48.   The 2014 Distribution Agreement, and the later Amended 2014 Distribution Agreements were entered into between EPTA and Modern Innovations.

49.   Upon information and belief, EPTA intentionally failed to disclose certain facts to Modern Innovations, including but not limited to the intent to only enter into the agreements so that Modern Innovations would extend its resources, time, and effort in building an awareness of

- 7 -

the 7Days brand in California, with the false promise of giving Modern Innovations the exclusive

rights to the 7Days brand, before breaching that promise. EPTA intentionally concealed that fact,

so that he would induce the Modern Innovations to enter into the agreements, in order to unjustly

prosper from Modern Innovation's effort.

50.     EPTA intentionally failed to disclose these facts that were known only to them and

that Modern Innovations could not have discovered.

51.     Modern Innovations did not know of these concealed facts.

52.     EPTA intended to deceive Modern Innovations by concealing these facts and to

induce Modern Innovations into entering into a business relationship with EPTA.

53.     EPTA's concealment was a substantial factor in causing Modern Innovation's harm,

in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### (Breach of Contract Not in Writing against All Cross-Defendants)

54.     Modern Innovations incorporates the allegations of paragraphs 1 to 53 above.

55.     EPTA and Modern Innovations entered into an agreement not in writing that EPTA

would credit Modern Innovation's Marketing costs, including fees associated with Core-Mark,

prior to the Amended 2014 Distribution Agreement.

56.     Modern Innovations did all, or substantially all, of the significant things that the

2014 Distribution Agreement required it to do.

57.     EPTA did not pay Modern Innovation's costs and fees associated with the agreed to

marketing efforts.

58.     EPTA's breach was a substantial factor in causing Modern Innovation's harm, in an

amount to be determined at trial.

///

- 8 -

**EIGHTH CAUSE OF ACTION**

**(Breach of Contract in Writing against All Cross-Defendants)**

59.     Modern Innovations incorporates the allegations of paragraphs 1 to 58 above.

60.     EPTA and Modern Innovations entered into the 2014 Distribution Agreement and the 2014 Amended Distribution Agreement, whereby Modern Innovations would receive the exclusive right to market and sell 7Day brand products from EPTA in California.

61.     The agreements also set a price on Modern Innovation's cost on 7Days Brand products from EPTA.

62.     Modern Innovations did all, or substantially all, of the significant things that the 2014 Distribution Agreement required it to do.

63.     EPTA breached both agreements, by only agreeing to supply 7Days Brand products to Modern Innovations at a higher cost than stated in the agreements. EPTA also did not provide Modern Innovations with the exclusive right to market and sell the 7Days brand products in California.

64.     EPTA's breach was a substantial factor in causing Modern Innovation's harm, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

Wherefore, Modern Innovations prays:

1.     For compensatory damages;

2.     For general damages;

3.     For punitive damages;

4.     For judgment to be entered in favor of defendant and cross-complainant Modern Innovations against plaintiffs and cross-defendant EPTA;

ADIL ABDUL AZIZ ALHOURANI DBA MODERN INNOVATIONS USA AND LUAY ALHUSAN DBA
MODERN INNOVATIONS USA'S CROSS-COMPLAINT AGAINST EPTA AMERICA, LLC

5.     For costs, including, to the extent applicable, attorneys' fees and expert fees, be awarded to defendant and cross-complainant Modern Innovations; and

6.     For such other and further relief as the court deems just and proper.

### DEMAND FOR JURY TRIAL

Cross-complainant Modern Innovations hereby demands a jury trial.

Date: August 10, 2018

Respectfully submitted,

JAMMAL, ESQ. APC

By: _____
    Ahmed M. Jammal, Esq.
    Attorney for Defendants Adil Abdul Aziz
    Alhourani and Luay Baddar, dba Modern
    Innovations USA

- 10 -

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 245 Fischer Ave., Suite B4, Costa Mesa, CA 92626.

On **August 10, 2018**, I served a true and correct copy of the foregoing document described as **ADIL ABDUL AZIZ ALHOURANI DBA MODERN INNOVATIONS USA AND LUAY ALHUSAN DBA MODERN INNOVATIONS USA'S CROSS-COMPLAINT AGAINST EPTA AMERICA, LLC**, on the interested parties in this action addressed as follows:

- **___X__ BY MAIL:** I deposited the document(s) in a sealed envelope in the mail at Costa Mesa, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

- **_____ BY FEDEX OVERNIGHT DELIVERY:** I delivered a copy of this document(s) to an authorized courier or driver authorized by FEDERAL EXPRESS, an express service carrier to receive documents, in an envelope or package designated by FEDERAL EXPRESS with delivery fees paid or provided for.

- **_____ BY PERSONAL DELIVERY**: To be personally delivered by _____ together with an unsigned copy of this declaration and with delivery fees for said messenger/delivery service previously paid or provided for.

- **_____ BY FAX:** I transmitted a copy of the document through a facsimile machine; telephone number (888) 254-3222. The transmission was reported as complete and without error. A true and correct copy of the properly issued transmission report is attached.

- **___X__ (State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

- **_____ (Federal)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **August 10, 2018**, at Costa Mesa, California.

_____

- 1 -

PROOF OF SERIVCE

1

**SERVICE LIST**

2

*EPTA America, LLC v. Adil Abdul Aziz Alhourani, et al.*

3

Orange County Superior Court Case No. 30-2017-00939685-CU-CL-CJC
Honorable Walter Shwarm

4

| | |
|---|---|
| Gary A. Bemis (SBN 92508) | *Attorney for Plaintiff:* |
| Randall A. Baker (SBN 231721) | |
| **Law Office of Gary A. Bemis** | EPTA AMERICA, LLC |
| 3870 La Sierra Ave. Suite 239 | |
| Riverside, CA 92505 | |
| Telephone:  (951) 588-2080 | |
| Facsmilie: (951) 588-2096 | |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

PROOF OF SERIVCE

**JAMMAL, ESQ.**
A Professional Law Corporation
245 FISCHER AVENUE SUITE B4
COSTA MESA CALIFORNIA 92626



U.S. POSTAGE
PAID
IRVINE, CA
92619
AUG 15 18
AMOUNT
**$1.63**
R2304E107184-22

1000    92505

LAW OFFICE OF GARY A. BEMIS
ATTN: GARY A. BEMIS, ESQ. & RANDALL BAKER, ESQ.
3870 LA SIERRA AVE., SUITE 239
RIVERSIDE, CA 92505

# Exhibit B



PO Box 8317 Chicago, Il 60680-8317

**Harbinder K. Johal**
Claim Consultant
Commercial Claim Liability
Telephone: 415-932-7521
877-371-5122

October 19, 2018

**CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Robert Kafafian
EPTA America, LLC
50 Morton Street, Unit A
East Rutherford, NJ 07073

| Re: | Claim No.: | **E2E67507** |
|---|---|---|
| | Insured: | EPTA America, LLC |
| | Counterclaim Plaintiffs: | Adil Abdul Aziz Alhourani and Luay Baddar d/b/a Modern Innovations USA |
| | Date of Notice: | September 27, 2018 |
| | Date of Loss: | Not specified |
| | Policy No.: | 5085627212 (Primary) |
| | Policy Dates: | 12/01/2015– 12/01/2016 |
| | | 12/01/2016 – 12/01/2017 |
| | Insurer: | American Casualty Company of Reading, PA |
| | | 12/01/2017 – 12/01/2018 |
| | Insurer: | Continental Casualty Company |
| | Policy No.: | 5085627307 |
| | Policy Dates: | 12/01/2015 – 12/01/2016 |
| | | 12/01/2016 – 12/01/2017 |
| | | 12/01/2017 – 12/01/2018 |
| | Insurer: | Continental Casualty Company |

Dear Mr. Kafafian:

This letter sets forth American Casualty Company of Reading, PA ("ACCO") and Continental Casualty Company (collectively, the "CNA Insurers") coverage position in connection with the allegations Adil Abdul Aziz Alhourani and Luay Baddar Aka Luay Alhusan d/b/a Modern Innovations USA ("Modern Innovations") assert against EPTA America, LLC ("EPTA") in the Cross-Complaint filed in the Complaint entitled: EPTA America, LLC v. Adil Abdul Aziz Alhourani, et al, pending in Orange County Superior Court, State of California under Case No. 30-2017-00939685-CU-CL-CJC (the "Cross-Complaint"). We need to advise you that there is no coverage afforded for the Cross-Complaint, including any duty to defend EPTA, under the primary policies issued by ACCO and CCC and the umbrella policies issued by CCC as the claims asserted in the Cross-Complaint fall outside the scope of coverage.

## I.   THE CROSS-COMPLAINT

The following summarizes the Cross-Complaint's allegations asserted against EPTA. The

CNA Insurers recognize that the allegations have not been proven and the following does not suggest they have legal or factual merit.

The Cross-Complaint alleges the following: Modern Innovations entered into agreements with EPTA on April 15, 2014 and February 16, 2016 to be the exclusive distributor of the 7Days brand of individually packaged snacks in North America. Modern Innovations alleges that, after entering into the February 16, 2016 (the "Amended 2014 Distribution Agreement") which required Modern Innovations to lower its prices to its customers on its 7Days products, EPTA raised its prices to its customers, thereby rendering a zero profit return to Modern Innovations. Further, on October 2017, Modern Innovations alleges that "EPTA circulated a damaging letter by way of Jim Burns to Modern Innovations reputation, misstating facts and events" (¶ 15). Modern Innovations alleges that "Mr. Bum's actions were made with malice, and oppression, and fraud in order to 22 defraud Modem Innovations out of the market and to take over the relationships that Modem 23 Innovations built within its network" (¶ 16).

Modern Innovations purports to assert the following causes of action: Breach Of The Covenant Of Good Faith And Fair Dealing (2014 Distribution Agreement); Breach Of The Covenant Of Good Faith And Fair Dealing (Amended 2014 Distribution Agreement); Intentional Interference with Contractual Relations); Intentional Interference with Prospective Economic Relations); Negligent Interference with Prospective Economic Relations); Fraudulent Concealment and Inducement; Breach of Contract not in Writing); and Breach of Contract in Writing.

As a result, Modern Innovations seek the following relief with respect to the Cross-Complaint: compensatory damages; general damages; punitive damages; costs, including attorneys' fees and expert fees; and such other and further relief as the Court deems just and proper.

## II.    The Policies

All words in quotations are set forth in the policies and we refer you to the policies for those definitions.

### A.   The Primary Policies

ACCO issued policy number 5085627212 to EPTA for annual, consecutive policy terms from December 1, 2015 to December 1, 2017 policy period. The policy was renewed by CCC for the December 1, 2017 to December 1, 2018 policy period. Each policy provides a limit of $1 million Each Occurrence, $1 million for Personal and Advertising Injury and each policy is subject to a $2 million General Aggregate.

Subject to all of their terms, conditions and limitations, the primary policies provide that "we will pay those sums that the insured becomes legally obligated to pay as damages" because of "bodily injury" or "property damage" caused by an "occurrence", or "personal and advertising injury" arising out of a listed offense to which this insurance applies. The "occurrence" must take place in the "coverage territory" and the "bodily injury" and "property damage" must occur during the policy period. The "personal and advertising injury" offense must be committed in the" coverage territory" during the policy period.

The primary policies contain the following relevant exclusions, providing that "[t]his insurance does not apply to:

**p.  Personal And Advertising Injury**

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(6)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

Disclaimer

For coverage to apply under the primary policies' "bodily injury" or "property damage" coverage, the Cross-Complainants must seek damages for "bodily injury" or "property damage" caused by an "occurrence". The primary policies define "bodily injury," pursuant to the Blanket Additional Insured – Liability Extension Endorsement, as "bodily injury, sickness or disease sustained by a person, including death, humiliation, shock, mental anguish or mental injury by that person at any time which results as a consequence of the bodily injury, sickness or disease". The primary policies define "property damage" as "physical injury to tangible property, including all resulting loss of use of that property" as well as "loss of use of tangible property that is not physically injured."  Please note that "property damage" does not include economic loss. Finally, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The Cross-Complaint does not seek damages for "bodily injury" or "property damage" caused by an accidental "occurrence," as those terms are defined by the primary policies.  The CNA Insurers thus disclaim coverage under the primary policies' "bodily injury" and "property damage" coverage.

Subject to all of their terms, conditions, limitations and exclusions, "personal and advertising Injury," covers the enumerated offenses of: false arrest, detention or imprisonment; malicious prosecution; wrongful eviction; oral or written publication of material that slanders or libels a person or organization or disparages a person or organization's goods, products or services; oral or written publication of material that violates a person's right of privacy; use of another's advertising idea in the insured's "advertisement," and infringing upon another's copyright, trade dress or slogan in the insured's "advertisement." The definition is also expanded, pursuant to the Blanket Additional Insured – Liability Extension Endorsement, to include certain types of discrimination and humiliation not done intentionally by or at the direction of the insured or any "executive officer" or stockholder. Finally, the term "advertisement" is defined in the primary policies as "a notice that is broadcasted or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For purposes of this definition, notices that are

published include material placed on the Internet or on similar electronic means of communication; and regarding web-sites, only that part of a web site that is about your goods, products or services for the purpose of attracting customers or supporters is considered an "advertisement."

The Cross-Complaint alleges the following causes of action:  Breach Of The Covenant Of Good Faith And Fair Dealing (2014 Distribution Agreement); Breach Of The Covenant Of Good Faith And Fair Dealing (Amended 2014 Distribution Agreement); Intentional Interference with Contractual Relations; Intentional Interference with Prospective Economic Relations; Negligent Interference with Prospective Economic Relations; Fraudulent Concealment and Inducement; Breach of Contract not in Writing; and Breach of Contract in Writing.  None of these causes of action constitute a "personal and advertising injury" offense.  To the extent that the October 2016 (referred to as "October 2017" in the Cross-Complaint) letter sent by Jim Burns constitutes a claim for libel, slander and/or disparagement, coverage would be precluded by Exclusion p. (6), the "breach of contract" exclusion, which states that there is no "personal and advertising injury" coverage for claims "arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement'."

The Modern Innovations Suit alleges that EPTA and Modern Innovations entered into a Distribution Agreement in 2014, which was amended in 2016.  The allegedly defamatory statements made in the October 2016 letter and the allegations asserted in the Cross-Complaint in support of Modern Innovations' intentional interference with contractual relations and breach of contract counts concern and/or arise out of the same facts:  EPTA's alleged circulation of "unsubstantiated claims and letters to Modern Innovations' customers" which breached the 2014 Distribution Agreement and damaged Modern Innovations by communicating to customers' that Modern Innovations was no longer the exclusive distributor of EPTA's 7Days products. The Cross-Complaint also alleges that EPTA engaged in this conduct, with the intent to disrupt the parties' relationship and/or because it knew that disruption of the relationship was certain or substantially certain to occur.  The CNA Insurers thus disclaim coverage under the primary policies' "personal and advertising injury" coverage.

To the extent that Modern Innovations sustained any "personal and advertising injury" caused by, or at the direction of EPTA, or any of its members, managers, or employees, with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury," coverage is excluded by exclusion p.(1) as above.

To the extent that Modern Innovations sustained any "personal and advertising injury" that arose out of oral or written publication of material, if done by or at the direction of EPTA, or any of its members, managers, or employees, with knowledge of its falsity, coverage is excluded by exclusion p.(2) as above.

In addition, the CNA Insurers reserve their rights to rely on Exclusion p. (3), the "prior publication" exclusion, which excludes coverage for "personal and advertising injury" if the "personal and advertising injury" arises out of oral or written publication of material was first published prior to the beginning of the policy period.

5

B.  The Umbrella Policies

CCC issued policy number 5085627307 to EPTA for annual, consecutive policy periods from December 1, 2016 to December 1, 2018.  Each policy provides a limit of $9 million Each Incident and $9 million Aggregate, subject to a retained limit of $10,000.

Subject to all of its terms, conditions and limitations, the umbrella policies provide that we will pay those sums in excess of "scheduled underlying insurance," "unscheduled underlying insurance" or the "retained limit" that the insured becomes legally obligated to pay as "ultimate net loss" because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies, caused by an "incident".

The umbrella policies contain the following relevant exclusions, providing that "[t]his Insurance does not apply to:

c.      "Personal and advertising injury" Exclusions

        "Personal and advertising injury":

        (1)     Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

        (2)     Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

        (5)     Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

For the reasons stated above in connection with the underlying primary policies, CCC disclaims coverage for the Cross-Complaint under the umbrella policies' "bodily injury," "property damage" and "personal and advertising injury" coverage.  The grounds set forth in our coverage position for the primary policies also apply to said umbrella policies and CCC adopts and joins in the coverage position as stated above. CCC disclaims coverage for the Cross-Complaint because it does not allege facts potentially seeking damages for "bodily injury," "property damage," or "personal and "advertising injury" caused by an "incident". As set forth above, the "breach of contract" exclusion would preclude coverage for any "personal and advertising injury" offense even if alleged and CCC reserves its right to disclaim coverage pursuant to the "knowing violation" and "knowledge of falsity" exclusions.

C.  Other Coverage Defenses

The CNA Insurers also disclaim coverage for punitive damages, to the extent that insurance coverage is prohibited as a matter of public policy, and attorney's fees which are excluded from coverage by the Supplementary Payments provision of the primary policies.

6

### III.    CONCLUSION

In connection with our determination that the primary and umbrella policies do not provide coverage for the Cross-Complaint, we have quoted and/or paraphrased the policy language. However, we reserve our right to rely upon all the policies' provisions, whether or not specifically quoted and/or paraphrased in this letter. The CNA Insurers shall not be estopped from relying on any other policy provision or basis for limiting or denying coverage, including those based on law or public policy. The CNA Insurers also expressly reserve their right to assert additional coverage defenses if appropriate, including their right to have the coverage issues resolved by a declaratory judgment action.

If you have or subsequently receive additional information that you believe may affect the coverage determination, please forward it to me immediately. Please also forward any amended complaints filed for our review and coverage determination

Please be further advised that if you disagree with the CNA Insurers' decision you may request reconsideration of that decision, which is referred to as an internal appeal. An internal appeal must be submitted in writing to Tanya Beltran, CNA, Operations Analysis Director, PO Box 8317, Chicago, IL 60680-8317, by fax at 714-256-7905 or by e-mail to NJ Appeal Process@cna.com.or it can be emailed to Tanya Beltran at tanya.beltran@cna.com. Following receipt of your written appeal request, it will be submitted to the CNA Insurers' Internal Appeals Panel for review. The Internal Appeals Panel will review your written appeal request within ten (10) business days of receipt in our offices. The Internal Appeals Panel decision will be sent to you within (3) three business days following completion of the review process. Any questions concerning CNA Insurers' internal appeals process may be directed to Tanya Beltran, at 315-431-6894.

Pursuant to the California Code of Regulations, Title 10, Chapter 5, subchapter 8, Unfair Claims Settlement Practices Regulations, we are required to advise you that you may have this matter reviewed by the California Department of Insurance, located at 3450 Wilshire Boulevard, Los Angeles, CA 90010. The phone number is (800) 927-4357.

If you have any questions or comments in response to the foregoing reservation of rights and reserved defense, please do not hesitate to contact the undersigned.

Sincerely,

Harbinder K. Johal

Harbinder K. Johal
Claims Consultant
American Casualty Company of Reading, PA
Continental Casualty Company

cc:    Craig Loftus
       Richards Associates, Inc.
       PO Box 1757
       Clifton, NJ 07015

Martin R. Kafafian, Esq.
Beattie Padovano, LLC
50 Chestnut Ridge Road, Suite 208
Montvale, NJ 07645

# Exhibit C



**333 S. Wabash Ave**
**Chicago IL 60604**

Lisa Shreiber
Commercial Coverage Counsel
125 Broad St 7th Floor
New York, NY 10004

November 6, 2018

212-440-7327
Lisa.Shreiber@CNA.com

**VIA UPS & EMAIL**
Martin R. Kafafian (mrk@beattielaw.com)
Beattie Padovano, LLC
50 Chestnut Ridge Rd., Suite 208
P.O. Box 244
Montvale, NJ 07645-0244

| Re: | *Cross Complaint filed in EPTA America, LLC v. Adil Abdul Alhourani dba Modern* | |
|---|---|---|
| | *Innovations USA, Case No.: 30-2017-00939685 (Sup Ct Orange County CA)* | |
| | Insured: | EPTA America, LLC |
| | Policies: | 5085627212 (12/01/15 to 12/01/17) (American Cas Co of Reading, PA) |
| | | 5085627212 (12/01/17 to 12/01/18) (Continental Casualty Co) |
| | | 5085627307 (12/01/15 to 12/012/18) (Continental Casualty Co) |
| | Claim No.: | E2E67507 |

Dear Mr. Kafafian:

On November 5, 2018, American Casualty Co. of Reading, PA (ACCO) and Continental Casualty Company (CCC) (jointly, the CNA Insurers) convened a New Jersey Appeal Panel (the Panel) to consider EPTA America, LLC's (EPTA) October 24, 2018 appeal from the CNA Insurers' October 19, 2018 coverage disclaimer.

The Panel has carefully considered the arguments made in your October 24 correspondence but respectfully disagrees with the conclusions you reach. The CNA Insurers stand by the coverage disclaimer for the reasons set forth therein and for the additional reasons set forth below.

The CNA Insurers reaffirm their position that the Cross-Complaint does not implicate the policies' "personal and advertising injury" coverage. Even assuming a court could find the Cross-Complaint potentially seeks damages for the "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" (the "libel, slander, disparagement offense"), the CNA Insurers have no duty to defend EPTA because the "breach of contract" exclusion precludes any potential coverage. This exclusion, which is in each of primary policies, precludes coverage for a "personal and advertising injury" . . . arising out of breach of contract."

Although the policies do not contain a choice of law provision, New Jersey law likely applies to the coverage issues. Under New Jersey law, the duty to defend is determined by comparing the

allegations of the complaint to the terms of the insurance policy. The duty to defend exists whenever "the complaint states a claim constituting a risk insured against by the policy." *Voorhees v. Preferred Mut. Ins. Co.,* 128 N.J. 165, 173 (1992). The New Jersey courts "narrowly construe" policy exclusions. However, the New Jersey courts also recognize that an insurance policy should be interpreted "according to its plain and ordinary meaning" and that exclusions are "presumptively valid and will be given effect if 'specific, plain, clear, prominent, and not contrary to public policy.'" *Princeton Ins. Co. v. Chunmuang,* 151 N.J. 80, 95 (1997). The Supreme Court of New Jersey has construed the "arising out of" language in the context of an exclusion to mean "originating from," "growing out of" or having a "substantial nexus with" the activity for which coverage is provided. *Am. Motorists Ins. Co. v. L-C-A Sales Co.,* 155 N.J. 29, 35 (1998). Applying this standard, courts applying New Jersey law have held that the breach of contract exclusion precludes any potential coverage if the "personal and advertising injury" "originates from," "grows out of," or has a "substantial nexus with" the insured's breach of a contract or agreement, as is alleged in this case. *Liberty Ins. Corp. v. Tinplate Purchasing Corp.,* 743 F. Supp. 2d 406 (D.N.J. 2010)

In *Tinplate,* the court found the breach of contract exclusion precluded any potential "personal and advertising injury" coverage for an underlying complaint which alleged facts analogous to those alleged in the Cross Complaint and even though the complaint in *Tinplate* asserted a cause of action for defamation.

There, the policyholder and claimant, like EPTA and Modern Innovations here, had entered into a contract whereby the insured granted the claimant the exclusive right to manufacture and market a drywall and stud framing system (the Tralock product). The complaint also alleged that the insured breached many of its obligations under the contract and defamed the claimant to others by stating that the claimant was not licensed for the Tralock product, that it lacked certification to sell the product, that it was unable to meet delivery commitments, etc. The claimant alleged that these statements were made as part of a "conspiracy to destroy [claimant] and put [claimant] out of business by defaming [claimant]." *Id.* at 409.

The parties did not dispute that the claims for defamation and tortious interference potentially sought damages for a "personal and advertising injury." However, the *Tinplate* Court agreed with Plaintiff Liberty Insurance that the breach of contract exclusion precluded any potential "personal and advertising injury" coverage. The court noted the term "arising out of" is construed by New Jersey courts to mean conduct "originating from," "growing out of" or having a "substantial nexus with" the activity for which coverage is provided. The *Tinplate* court found the defamation and tortious interference claims bore a "substantial nexus" to the breach of contract claims and therefore were excluded from coverage under the primary policy. The court found the tort and contract claims were "inextricably linked, because the tort claims against the defendants arise from the same essential facts and circumstances as those which underlie the breach of contract claims." The defamation count arose out of and concerned the same facts supporting the insured's breach of the parties' licensing agreement, e.g. that the claimant lacked proper certification to sell the product, that the claimant was unable to meet its delivery commitments, that the insured made false statements about the claimant's right to deal directly with Tinplate's customers; and that "these statements were made with the express purpose of putting [the claimant] out of business." *Id.* at 414.

The CNA Insurers believe a court applying New Jersey law would likewise find that they have no duty to defend the Cross-Complaint under the primary policies. Preliminarily, and unlike the complaint in *Tinplate*, the Cross Complaint does not allege a cause of action against EPTA for libel, slander or disparagement. Even assuming a court could find that certain factual allegations potentially seek damages for the "libel, slander, disparagement offense," the primary policies' breach of contract exclusion precludes any potential coverage because the allegedly false or fraudulent statements "originated from," "grew out of" or had a "substantial nexus with" EPTA's alleged breach of the parties' Distribution Agreements.

The Cross Complaint alleges the following: "On April 15, 2014, EPTA and Modern Innovations entered into a distributor agreement (the '2014 Distributor Agreement')," which granted "Modern Innovations the exclusive right to market and sell EPTA's 7Days Brand within the state of California" (¶¶5-6). On or about "February 16, 2016, EPTA compelled Modern Innovations to amend the terms of the 2014 Distribution Agreement (the 'Amended 2014 Distribution Agreement')" and "failed to disclose that it planned to force Modern Innovations out of the market and to take its customers away." (¶12). "Modern Innovations had agreements [and] built business relationships with multiple retail business to distribute products to, including EPTA's 7Days brand." (¶14). However, on or about October, 2017,[1] "EPTA circulated a damaging letter by way of Jim Burns [the CEO and President of EPTA] to Modern Innovations reputation [*sic*], misstating facts and events." (¶15). In its Fourth and Fifth Causes of Action, Modern Innovations alleges that EPTA intentionally or negligently engaged in the wrongful conduct, by "preventing Modern Innovations from supplying its customers, and circulating false and unjustified claims about Modern Innovations to its customers." (¶¶37-45).

You have also provided the CNA Insurers with a copy of Jim Burns' October 27, 2016 letter referenced in the Cross Complaint, which is addressed to EPTA's Valued Customers and which states in relevant part that:

> In July of 2016 EPTA America made the decision to sever its ties with Modern Innovations due to a host of issues that could not be resolved with the customer. EPTA's last direct shipment to Modern Innovations occurred on July 13, 2016. In addition, we have reason to believe that [Modern Innovations] procured product through a diverter on August 8, 2016. Since then, we do not believe Modern Innovations USA has been able to indirectly procure any products that EPTA America sells.

And, you have forwarded the Parties' 2014 Distribution Agreement, which provides in relevant part that "[EPTA] hereby appoints and grants Distributor [Modern Innovations] the exclusive and non-assignable right to sell any and all of company's 7Days products in the state of California. . ."

As in *Tinplate*, the breach of contract exclusion precludes any potential "personal and advertising injury" coverage for the Cross-Complaint. The allegedly false and fraudulent statements made in

---

[1] You have advised Ms. Johal that this letter was actually sent in October, 2016 and have provided Ms. Johal with a copy of this correspondence.

the Cross Complaint and Jim Burns' October 27, 2016 correspondence arise out of the same set of facts which support Modern Innovations' claim that EPTA breached the parties' Distribution Agreements. The Cross Complaint also alleges that EPTA engaged in this conduct with the intent to disrupt the parties' relationship and/or because it knew that disruption of the relationship was certain or substantially certain to occur.

Finally, the cases you purport to rely on are inapplicable and have been distinguished by *Tinplate*, which was not addressed in your October 24, 2018 correspondence. In *Tinplate*, the policyholder, like EPTA here, argued that the "substantial nexus" test is not the law in New Jersey when interpreting "arising out of" and argued that the court should apply the "but for" test, citing to *Houbigant Inc v. Fed. Ins. Co.*, 374 F.3d 192 (3d Cir. 2004). The *Tinplate* Court, however, disagreed, holding that the "substantial nexus test" is "precisely the law" in New Jersey as announced by the New Jersey Supreme Court in *American Motorists*, 155 N.J. 29, 35, 713 A. 2d 1007 (1998). *Tinplate*, 742 F. Supp. 2d at 414.

The CNA NJ Appeals Panel thus affirms the CNA Insurers' original decision to disclaim coverage for the Cross-Complaint. If you are not satisfied with the decision of the Panel, you may file a written complaint with the Office of the Insurance Ombudsman. The address and contact information for the Office of Insurance Ombudsman is as follows:

The Office of Insurance Ombudsman
NJ Department of Banking and Insurance
20 West State Street
PO Box 472
Trenton, NJ  08625-0472
Phone: 1-800-446-7476
FAX: 609-292-2431
Email:  ombudsman@dovi.state.nj.us

Sincerely,

Lisa Shreiber (for the panel)